IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-459-D

PENTAIR WATER POOL AND )
SPA, INC., and DANFOSS DRIVES A/S, )
                                  )
                Plaintiffs, )
                                  )
                v. )                         **ORDER**
                                  )
HAYWARD INDUSTRIES, INC., and )
HAYWARD POOL PRODUCTS, INC., )
                                  )
                Defendants. )

        On August 31, 2011, Pentair Water Pool and Spa, Inc. and Danfoss Drives A/S (collectively "Pentair") filed a complaint alleging patent infringement by defendants Hayward Industries, Inc. and Hayward Pool Products, Inc. (collectively "Hayward") [D.E. 1]. Pentair filed a first amended complaint on December 6, 2011, alleging that Hayward infringed upon five different patents: U.S. Patent Nos. 7,854,597 (the "'597 Patent"), 7,857,600 (the "'600 Patent"), 7,686,587 (the "'587 Patent"), 7,815,420 (the "'420 Patent"), and 8,043,070 (the "'070 Patent") [D.E. 66-1]. On January 23, 2012, Senior United States District Judge James C. Fox denied Pentair's motion for a preliminary injunction against Hayward, citing Pentair's failure to show a likelihood of irreparable harm in the absence of an injunction [D.E. 119].

        In a complaint filed May 4, 2012, Pentair alleges that Hayward has additionally infringed upon U.S. Patent Nos. 7,704,051 (the "'051 Patent") and 8,019,479 (the "'479 Patent"). 5:12-CV-251-D, D.E. 1 (E.D.N.C. May 4, 2012). On August 9, 2012, Judge Fox consolidated that action with the first case [D.E. 219].

        On June 13, 2012, Hayward filed requests for *inter partes* reexamination of four of the seven

patents at issue—the '597 Patent, the '600 Patent, the '587 Patent, and the '420 Patent—with the U.S. Patent and Trademark Office ("PTO"). Defs.' Mem. Supp. Mot. Stay [D.E. 182] 1. On June 13, 2012, Hayward moved to stay proceedings in this case until after the reexamination concludes [D.E. 168]. Pentair opposes staying the case. Pls.' Mem. Opp'n Mot. Stay [D.E. 204]. The PTO has since granted reexamination for all four patents and has issued non-final rejections of every claim of each patent. [D.E. 215-3] ('600 Patent); [D.E. 222-3] ('597 Patent); [D.E. 222-5] ('420 Patent); [D.E. 222-7] ('587 Patent). The PTO, however, has yet to analyze Pentair's response.

On August 13, 2012, the case was reassigned from Judge Fox to the undersigned [D.E. 220]. On December 7, 2012, the court held a status conference and heard arguments from both parties regarding pending motions [D.E. 238]. As explained below, the court denies Hayward's motion to stay, grants in part and denies in part Pentair's motion to compel production of documents, and orders the parties to confer and propose a joint discovery schedule in preparation for trial on May 12, 2014.

I.

District courts have inherent authority to order a stay pending conclusion of a PTO *inter partes* reexamination. See Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). The court's decision to grant or deny a stay is discretionary. NTP, Inc. v. Research In Motion, Ltd., 397 F. Supp. 2d 785, 787 (E.D. Va. 2005). Courts weigh three factors when determining whether to grant a stay pending reexamination: (1) "whether a stay would unduly prejudice the nonmoving party"; (2) "whether a stay would simplify [the] issues and the trial of the case"; and (3) "the stage of the proceedings," including whether discovery is complete and a trial date has been set. Akzenta Paneele + Profile GmbH v.

Unilin Flooring N.C. LLC, 464 F. Supp. 2d 481, 484 (D. Md. 2006); see Biogaia AB v. Nature's Way Prods., Inc., No. 5:10-CV-449-FL, 2011 WL 3664350, at *1 (E.D.N.C. Aug. 18, 2011) (unpublished). The court considers each factor in turn.

First, a stay pending reexamination causes delay that may prejudice the patent holder. However, "delay is inherent in the reexamination process and does not constitute, by itself, undue prejudice." Cellectis S.A. v. Precision Biosciences, Inc., No. 5:08-CV-119-H, 2010 WL 3430854, at *4 (E.D.N.C. Aug. 31, 2010) (unpublished) (quotation omitted). Rather, in analyzing prejudice to the nonmovant, courts consider a number of issues. Where the parties are direct competitors, a patent infringer can take market share and build brand loyalty while the case is pending, and these injuries may not be recoverable in damages or later injunctive relief. See, e.g., Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC, Civil No. JKB-09-2657, 2011 WL 836673, at *2 (D. Md. Mar. 3, 2011) (unpublished); Cellectis, 2010 WL 3430854, at *4; Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc., Civil Action No. 3:09cv791, 2010 WL 1946262, at *4 (E.D. Va. May 10, 2010) (unpublished). A stay may deprive the patent owner of injunctive relief when the patent would expire before completion of reexamination and trial. See, e.g., Cellectis, 2010 WL 3430854, at *4. Courts also consider whether delay will lead to loss of evidence. E.g., BarTex Research, LLC v. FedEx Corp., 611 F. Supp. 2d 647, 651–52 (E.D. Tex. 2009). And courts consider the patent holder's delay, from the point when the patent holder could have filed suit until the complaint was filed, and the movant's delay, from the filing of the lawsuit until requesting a reexamination. See, e.g., Mike's Train House, 2011 WL 836673, at *4.

The parties disagree on how long a stay would delay this case. Hayward argues that the delay will be shortened because reexaminations must be executed with "special dispatch." Defs.' Mem.

3

Supp. Mot. Stay 6; see 35 U.S.C. § 305. Pentair responds that the delay will likely be five to ten years, and cites statistics in support of that contention. Pls.' Mem. Opp'n Mot. Stay 13–16. Given the ability for both parties to participate in the reexamination, to appeal the reexamination results to the Board of Patent Appeals and Interferences ("Board of Patent Appeals"), and from there to appeal to the Federal Circuit, there is a substantial likelihood that the reexamination process will take many years. See MPEP § 2601 (8th ed. Rev. 9, Aug. 2012).

Pentair waited over a year to file the complaint after Hayward's alleged infringing activities began, and waited another month to request a preliminary injunction. However, since filing suit, Pentair has sought a quick resolution of the case. On the other hand, Hayward did not request reexamination or move to stay until ten months after Pentair filed the complaint, and has sought a more protracted pretrial schedule.

If the court granted a stay and it lasted for several years, Hayward could continue to take market share from its direct competitor Pentair, resulting in unknown losses to Pentair's future earnings that would be difficult to compensate with damages. If a stay pending reexamination delayed the case for as long as Pentair fears, the patents at issue would have little remaining life and the technology may have significantly changed. Thus, the stay would effectively prevent Pentair from asserting its right as a patent holder to enjoin competitors from making or selling its products. Based on these considerations, this first factor weighs heavily against granting a stay.

Next, the court examines whether a stay would simplify the issues and the trial of the case. Reexamination can simplify the issues in the case by "cancellation, clarification, or limitation of claims, and, even if the reexamination [does] not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court." Ethicon, 849 F.2d at 1428; see Automated

4

Merch. Sys., Inc. v. Crane Co., 357 F. App'x 297, 303 (Fed. Cir. 2009) ("Because the stay was granted pending the outcome of patent reexamination proceedings, it may simplify the issues for trial. It might even render a trial unnecessary.").

Several considerations impact the potential helpfulness of the reexamination process to the court. First, the examiner and the Board of Patent Appeals apply the broadest reasonable interpretation of the claim language, rather than the narrow reading given by the courts. See In re Yamamoto, 740 F.2d 1569, 1571–72 (Fed. Cir. 1984). Second, in the proceedings before the PTO, the PTO does not presume that the patent is valid. Rather, the examiner reviews the claims like those of a new patent application. In re Etter, 756 F.2d 852, 855–59 (Fed. Cir. 1985). In contrast, in an infringement case in federal court, an issued patent is presumed to be valid, 35 U.S.C. § 282, which increases the alleged infringer's burden of proof. See Etter, 756 F.2d at 856. Third, the court is empowered to consider a much larger body of evidence and more arguments for invalidity than the PTO. See Ethicon, 849 F.2d at 1427–29. Thus, the output of the reexamination, other than cancellation of the claims, does not provide an exact guide for the court to follow.

If the reexamination process ultimately resulted in rejection of all claims of the '597 Patent, the '600 Patent, the '587 Patent, and the '420 Patent, that result would substantially streamline the litigation. Moreover, even if the claims are not ultimately rejected, the reexamination process will clarify claim interpretation for the parties and the court going forward. See Akzenta, 464 F. Supp. 2d at 485. Additionally, where the PTO has rejected some claims, the court can preserve resources by not considering claims that may change on reexamination. See Borgwarner, Inc. v. Honeywell Int'l, Inc., Civil No. 1:07cv184, 2008 WL 2704818, at *2 (W.D.N.C. July 7, 2008) (unpublished) (denying stay but suggesting the issue of simplification should be revisited if "the [PTO] issues an

5

Office Action on the Merits rejecting the claims"). However, any surviving claims would require the court to consider arguments about invalidity, and under a different standard and on different evidence from that used by the PTO. In that case, the stay would not preserve much of the court's resources. See Akzenta, 464 F. Supp. 2d at 486.

Here, Hayward has not requested reexamination of all of the patents in this case. Thus, the parties' claims and defenses with respect to three of the seven patents will not be substantially simplified by staying the case. Although a stay pending reexamination may simplify some issues, it will not greatly simplify the case even if all of the patent claims under reexamination are cancelled. Therefore, this second factor weighs slightly against a stay.

Third, the court examines the stage of the proceedings to determine whether a stay is warranted. "In assessing the stage of the proceedings, [c]ourts focus on whether a trial date has been set and the degree to which discovery has been completed." Id. at 484. Here, discovery on the claims in Pentair's first complaint proceeded for nearly half a year, roughly following a scheduling order [D.E. 122]. The scheduling order required fact discovery to conclude by December 14, 2012, completion of expert depositions by April 8, 2013, and set trial for the November 4, 2013 term of court. Id.

This case was pending for about ten months before Hayward's motion, and such delay weighs against a stay. However, the scheduling order included continuing discovery activities for another ten months after Hayward filed the motion. Id. Pentair outlines the significant undertakings thus far in discovery, including setting the case schedule, appointing a mediator and court advisor, exchanging initial disclosures, exchanging discovery requests on the merits, and obtaining discovery from third parties. See Pls.' Mem. Opp'n Mot. Stay 9–10. Hayward notes the remaining discovery

and pretrial efforts include completing fact discovery, claim construction briefing, a Markman hearing, scheduling the trial, and trial preparation. See Defs.' Mem. Supp. Mot. Stay 14. On August 6, 2012, the parties filed a joint claim construction statement, but progress has otherwise ceased since the case was consolidated and reassigned [D.E. 218]. Because of the delay due to the consolidation, and the addition of the '051 and '479 Patents, discovery will extend well into 2013 and trial will not take place until May 12, 2014. Cf. [D.E. 227]. Although the case has been pending for more than a year, the substantial discovery and claim construction that remain outstanding weigh slightly in favor of a stay. See Biogaia, 2011 WL 3664350, at *2 (granting a stay when "discovery ha[d] just begun"); Mike's Train House, 2011 WL 836673, at *2 (denying a stay after submission of claim construction briefs and immediately before the Markman hearing); ePlus, Inc. v. Lawson Software, Inc., Civil No. 3:09cv620, 2010 WL 1279092, at *2–3 (E.D. Va. Mar. 31, 2010) (unpublished) (denying a stay after the Markman hearing); Borgwarner, 2008 WL 2704818, at *1 (denying a stay after submission of claim construction briefs and immediately before the Markman hearing).

In sum, the possible prejudice to Pentair and the lack of simplification of issues resulting from a stay pending reexamination together outweigh the fact that the case is still in a relatively early stage of proceedings. Therefore, the court denies Hayward's motion to stay.

II.

Next, the court addresses the remaining pending motions. First, the court addresses Pentair's motion to compel production of documents [D.E. 190]. Federal Rule of Civil Procedure 26 allows broad discovery, including "any nonprivileged matter that is relevant to any party's claim or defense," and the information sought "need not be admissible . . . if the discovery appears reasonably

7

calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 34 allows a party to request production of documents, but the responding party need only produce documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

The court has considered the written arguments submitted by Pentair and Hayward as well as the arguments made at the status conference. Pls.' Mem. Supp. Mot. Compel [D.E. 191]; Defs.' Opp'n Mot. Compel [D.E. 213]. Pentair's requests are reasonably calculated to lead to the discovery of admissible evidence. However, as Hayward notes, Pentair inappropriately seeks production or creation of a list of non-infringing alternatives. Defs.' Opp. Mot. Compel 8–9. The court will not compel production of documents that do not exist or compel Hayward to create such a document. Hayward has agreed to respond to interrogatories regarding non-infringing alternatives, and that is the correct mechanism for obtaining such discovery. See Fed. R. Civ. P. 33. Accordingly, the court grants in part and denies in part Pentair's motion to compel. Hayward shall produce the documents requested by Pentair, except that Hayward need not create or produce a list of non-infringing alternatives in response to the document requests. Pentair may submit interrogatories regarding non-infringing alternatives and Hayward shall respond in accordance with Rule 33.

Next, the court addresses the schedule. The court grants the parties' joint motion to reschedule pending claim construction deadlines and for a revised pretrial schedule [D.E. 227], and sets trial to begin on May 12, 2014. The parties shall meet and confer to create a proposed schedule of deadlines in accordance with the trial date and shall submit the proposed schedule by December 21, 2012. If the parties cannot agree on particular deadlines, the submission should include each party's proposed date. The court will issue a schedule in due course.

Finally, regarding Hayward's motion for reconsideration [D.E. 216], given the early state of

discovery as to the '051 Patent and the '479 Patent, the court need not decide the number of claims to be construed at this stage. As discussed at the status conference, the parties shall confer to determine a reasonable set of claim terms and elements to be construed, and the court will consider the issue at the appropriate time. Therefore, Hayward's motion [D.E. 216] is denied as moot.

III.

In sum, the court DENIES Hayward's motion to stay [D.E. 168], GRANTS IN PART and DENIES IN PART Pentair's motion to compel [D.E. 190], and DENIES as moot Hayward's motion for reconsideration [D.E. 216]. The court sets trial to begin on May 12, 2014, and GRANTS the parties' joint motion to set deadlines and a pretrial schedule [D.E. 227]. The parties shall meet and confer to create a proposed schedule of deadlines in accordance with the trial date and shall submit a proposed schedule by December 21, 2012. The court will issue a new schedule in due course.

SO ORDERED. This 18 day of December 2012.

JAMES C. DEVER III
Chief United States District Judge

9

Case 5:11-cv-00459-D   Document 240   Filed 12/18/12   Page 9 of 9